IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| FREDDIE STEVE GRAY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIV. A. No. 23-0143-TFM-MU |
| ) | |
| HUNTSMAN ADVANCED MATERIALS ) | |
| AMERICAS, LLC, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Motion to Dismiss and Compel Arbitration filed by Defendants Huntsman Advanced Materials Americas, LLC ("Huntsman") and Worley Field Services, Inc. ("Worley") (Doc. 13), Plaintiff's response (entitled "Motion to Not Dismiss and to Not Compel Arbitration") (Doc. 15), and Defendants' Reply to Plaintiff's Motion to Not Dismiss and to Not Compel Arbitration (Doc. 16). This motion has been referred to the undersigned Magistrate Judge for entry of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. Gen LR 72(a)(2)(S). Upon consideration of all relevant filings in this case and the applicable law, the undersigned recommends that Defendants' motion to compel arbitration be granted, that Defendants' motion to dismiss be denied, and that this action be stayed pending arbitration.

**I. Summary of Proceedings and Plaintiff's Allegations**

On April 24, 2023, Plaintiff Freddie Steve Gray filed a *pro se* Complaint in this Court claiming that Defendants Huntsman and Worley violated Title VII of the Civil Rights Act of 1964 by allegedly demoting him in retaliation for his complaints of racial

discrimination. (Doc. 1, PageID. 1-3). Worley provides temporary and third-party staffing and labor personnel to clients throughout the United States. (*Id.* at p.2; PageID. 178). In 2021, Plaintiff was an employee of Worley who was assigned to perform work at Huntsman's McIntosh, Alabama facility. (Doc. 13-1 at pp. 3-4; PageID. 179-80). In his complaint, Plaintiff alleges that he complained about race discrimination within "their" hiring practice.[1] (Doc. 1 at p. 3; PageID. 3). He was then called into a meeting with Huntsman's EHS Manager and its HR Manager on May 27, 2021, during which they accused him of spreading rumors about race discrimination. (*Id.*). Approximately, five months later, the Worley Site Manager informed Plaintiff that Huntsman told him that Worley must terminate or demote him. (*Id.*). Worley's Site Manager told him that he had to follow Huntsman's directive. (*Id.*). So, Plaintiff accepted the demotion to a lower paying job. (*Id.*).

In connection with his employment, Plaintiff signed Worley's Employee Dispute Resolution Program and Mutual Arbitration Agreement ("Arbitration Agreement") on November 9, 2020. (*Id.* at pp. 4-7; PageID. 180-83). The Arbitration Agreement states, in relevant part, as follows:

> **Mutual Agreement to Arbitrate Claims.** By this Agreement, both Worley ("the Company") and Employee agree to resolve any and all claims, disputes or controversies arising out of or relating to the application for employment, employment with the Company, and/or the termination of employment by arbitration before a single, neutral arbitrator with experience resolving employment disputes.... Except as provided below, Employee and Company are voluntarily waiving all rights to trial in court before a judge or jury on all claims covered by this Agreement.

---

[1] Plaintiff's complaint is unclear as to whether "their" referred to Worley or Huntsman or both.

2

(*Id*. at p. 5; PageID. 181). The Arbitration Agreement also expressly states that the Covered Claims subject to arbitration include claims arising out of the employee's employment, such as the following types of claims:

> unpaid wages, overtime, benefits, or other compensation; discrimination or harassment on the basis of race, sex, age, national origin, religion, disability or any other unlawful basis; breach of contract; unlawful retaliation, wrongful discharge; employment-related common law claims such as wrongful discharge, fraud, defamation, or negligence; and claims arising under or alleging a violation of any statutes, laws, ordinances, or regulations applicable to applicants, to employees, or to the employment relationship.

(*Id.*). The Arbitration Agreement further provides that "[c]laims against the Company subject to arbitration shall include claims against all parent and subsidiary and related companies, as well as their respective officers, directors, managers, supervisors, employees (current and former) and any trade or business names or alleged joint employers." (*Id.*).

Immediately above the Company representative's signature and Plaintiff's signature is the following statement:

> By clicking "Agreed" below, and/or by reporting to work and continue employment after May 1, 2020, Employee is agreeing to be bound to this Mutual Agreement to Arbitrate Claims, as does the Company. Employee understands that, as more fully set forth above, Employee must arbitrate employment-related claims against the Company and that Employee may not file a lawsuit in court or pursue a jury trial in regard to any claims or disputes covered by this Agreement.

(*Id.* at p. 7; PageID. 183).

3

## II. Standard of Review

In *Bazemore v. Jefferson Capital Sys., LLC*, 827 F. 3d 1325, 1333 (11th Cir. 2016), the Eleventh Circuit set forth the following standard of review for courts faced with the applicability or enforceability of an arbitration agreement:

> [A] District Court may conclude as a matter of law that parties did or did not enter into an arbitration agreement only if there is no genuine dispute as to any material fact concerning the formation of such an agreement. A dispute is not genuine if it is unsupported by the evidence or is created by evidence that is merely colorable or not significantly probative. Conclusory allegations without specific supporting facts have no probative value for a party resisting summary judgment.

(Internal citations and quotation marks omitted). Therefore, because the standard of review for a motion to compel arbitration is the same as that applied to a motion for summary judgment, an order compelling arbitration is in effect a summary disposition of the issue of whether there has been a meeting of the minds on the agreement to arbitrate. *In re Checking Account Overdraft Litigation*, 754 F.3d 1290, 1294 (11th Cir. 2014) (quoting *Magnolia Capital Advisors, Inc. v. Bear Stearns & Co.*, 272 F. App'x 782, 785 (11th Cir. 2008)). As with a summary judgment motion, the court views the evidence in the light most favorable to Plaintiff. *Moore ex rel. Moore v. Reese,* 637 F.3d 1220,1232 (11th Cir. 2011).

## III. Discussion and Analysis

The propriety and enforceability of arbitration agreements is well settled. The Supreme Court has long held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24-25 (1983), and questions about arbitrability "must be

4

addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 668 (2012) (noting that Congress enacted the FAA "as a response to judicial hostility to arbitration"). Alabama law similarly recognizes and upholds the federal policy favoring arbitration. *See*, *e.g.*, *Auto Owners Ins., Inc. v. Blackmon Ins. Agency, Inc.*, 99 So. 3d 1193, 1196 (Ala. 2012) ("[A] motion to compel arbitration should not be denied 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'"); *Ocwen Loan Servicing, LLC v. Washington*, 939 So. 2d 6, 14 (Ala. 2006) (noting that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration).

The Court must consider three factors in determining whether to compel arbitration under the FAA: (1) whether the parties formed a valid and enforceable agreement to arbitrate; (2) whether the agreement to arbitrate encompasses the underlying dispute; and (3) whether the underlying contract evidences a transaction involving interstate commerce.  *See* 9 U.S.C. §§ 2-3; *King v. Cintas Corp.*, 920 F. Supp. 2d 1263, 1267 (N.D. Ala. 2013).

Defendants aver that they and Plaintiff are parties to a mutually binding arbitration agreement that encompasses the employment discrimination claims that Plaintiff now seeks to litigate in this Court, and therefore, pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.*, and controlling case law, the Court should compel arbitration and stay this action. Defendants argue that the grounds mandating arbitration under applicable law are all present, including the following:

- Plaintiff and Worley entered into a valid contract when he executed the Arbitration Agreement on November 9, 2020.

- Employment discrimination claims are among those claims that the parties agreed would be subject to mutually binding arbitration.

- Worley is a company that provides temporary and third-party staffing and labor personnel across the United States. The arbitration agreement at issue accordingly evidences a transaction affecting interstate commerce.

- The Arbitration Agreement further provides that "[c]laims against the Company subject to arbitration shall include claims against ... alleged joint employers."

- Huntsman is an alleged joint employer of Plaintiff.

In his response in opposition to Defendants' motion to compel arbitration, Plaintiff concedes that he entered into a valid arbitration agreement with Worley and does not argue that his claim against Worley should remain in this Court. (Doc. 15 at p. 1; PageID. 184). Rather, he argues that the arbitration agreement is not enforceable as to his claims against Huntsman because he did not enter into an arbitration agreement with Huntsman. (*Id.*).

A. **Claim Against Worley**

The "threshold question of whether an arbitration agreement exists at all is 'simply a matter of contract.'" *Bazemore,* 827 F.3d at 1329 (quoting *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 943 (1995)). "[S]tate law generally governs whether an enforceable contract or agreement to arbitrate exists." *Caley v. Gulfstream Aerospace Corp.,* 428 F.3d 1359, 1368 (11th Cir. 2005) (citing *Perry v. Thomas*, 482

6

U.S. 483, 492 n.9 (1987)). In *Heads v. Paradigm Investment Group, LLC*, this Court noted that "under Alabama law, '[a]rbitration provisions are to be treated like any other contractual provision.'" Civ. A. No. 1:20-cv-284-TFM-M, 2020 WL 4573821, at *4 (S.D. Ala. Aug. 7, 2020). Under Alabama law, the party seeking to enforce a contract must prove, by a preponderance of the evidence, "an offer, an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009).

 Here, all requisite elements of a contract under Alabama law are met, including offer, acceptance, consideration, and mutual assent to the terms. *Baptist Health Sys. v. Mack*, 860 So. 2d 1265, 1273 (Ala. 2003) (reversing trial court's denial of motion to compel arbitration, finding valid contract under Alabama law). Plaintiff accepted the terms of the Arbitration Agreement that Worley offered to him when he signed the Agreement and continued his employment with Worley. *Accord Junious v. Midtowne Fin.*, 2021 WL 5216882, at *5 (N.D. Ala. Aug. 31, 2021) (holding that "the defendant demonstrated the absence of any genuine dispute of material *fact* vis-à-vis the formation of a valid arbitration agreement by producing a copy of an arbitration agreement bearing the plaintiff's initials); *Jefferson v. Baptist Health Sys., Inc.*, 2014 WL 6455144, at *2 (N.D. Ala. Nov. 13, 2014) (compelling arbitration of agreement signed electronically). The agreement was also supported by consideration. Plaintiff is not the only one bound by the Arbitration Agreement. Until Plaintiff agreed to the terms offered, Worley had the same right as he did to pursue claims against him in court and before a jury. By accepting the agreement, however, Plaintiff received a benefit he would not otherwise have -- a contractual right to require Worley to have any claims it might want

to assert against Plaintiff heard in arbitration rather than in court. By its explicit terms, Plaintiff and Worley mutually assented to the Arbitration Agreement. Worley indicated its assent to the terms of the agreement by offering it to Plaintiff and by having a corporate official sign the Agreement on its behalf, and Plaintiff similarly assented by accepting it when it was offered. The parties' respective actions reflect mutual assent to the terms of the Agreement, and the resulting formation of a valid contract under Alabama law.

The Title VII race discrimination and retaliation claims brought by Plaintiff in this action are expressly encompassed by the Arbitration Agreement. The Arbitration Agreement expressly states that the Covered Claims subject to arbitration include claims arising out of the employee's employment, such as the following types of claims:

> unpaid wages, overtime, benefits, or other compensation; **discrimination or harassment on the basis of race,** sex, age, national origin, religion, disability or any other unlawful basis; breach of contract; **unlawful retaliation**, wrongful discharge; employment-related common law claims such as wrongful discharge, fraud, defamation, or negligence; and claims arising under or alleging a violation of any statutes, laws, ordinances, or regulations applicable to applicants, to employees, or to the employment relationship.

(*Id*. at p. 5; PageID. 181) (emphasis added). The Agreement also contains an explicit and mutual waiver of a jury trial: "Employee and Company are voluntarily waiving all rights to trial in court before a judge or jury on all claims covered by this Agreement. (*Id*.). These terms make clear that that the parties intended for arbitration to be the sole and exclusive mechanism for resolving discrimination claims that would otherwise be brought in court.

The Supreme Court has examined the FAA's "involving commerce" language and determined that this language signaled "congressional intent to exercise its

Commerce Clause powers to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273 (1995). According to the Court, the interstate commerce requirement is satisfied if the "transaction" remotely "involved" interstate commerce even if the contracting parties did not contemplate an interstate commerce connection. *Id.* at 843. Because Worley is a company that provides temporary and third-party staffing and labor personnel across the United States, the Arbitration Agreement meets the interstate commerce requirement. *See Yearwood*, 2015 WL 5935167 (finding FAA applicable and ordering arbitration); *see also Woods v. Dolgencorp,* C/A No. 7:20-cv-04399-DCC, 2021 WL 5989965, at * (D.S.C. Dec. 17, 2021) ("the Court finds that the [Dollar General Arbitration] Agreement affects interstate commerce").

Based on the foregoing, the Court finds that Plaintiff entered into a valid arbitration agreement with Worley that applies to the claims he has asserted in his complaint against Worley and meets the FAA's interstate commerce requirement. As noted above, Plaintiff has not challenged the making of the Arbitration Agreement here, nor its validity and enforceability as to his claims against Worley.

**B. Claims Against Huntsman**

Plaintiff argues that the Arbitration Agreement cannot be enforced as to his claims against Huntsman because he did not enter into an arbitration agreement with Huntsman. Huntsman contends that the claims Plaintiff has asserted against it are covered by the Arbitration Agreement for two reasons: 1) the Arbitration Agreement includes joint employers, and it was Plaintiff's joint employer and 2) the doctrine of equitable estoppel compels a finding that Plaintiff's claim against it should be arbitrated with the claim against Worley.

The determination of whether two entities are joint employers is fact specific. *See Wilborn v. So. Union State Comm. College*, 720 F. Supp. 2d 1274, 1294 (M.D. Ala. Mar. 30, 2010). To be joint employers, the two separate entities must "share or co-determine those matters governing the essential terms and conditions of employment." *Id.* "Whether an entity 'retained sufficient control is essentially a factual question.'" *Id.* at 1295 (quoting *Virgo v. Riviera Beach Assocs.,* 30 F.3d 1350, 1360 (11th Cir. 1994)). While Plaintiff alleged in his complaint that managers of Huntsman talked to him about his alleged allegations of race discrimination and that his Worley manager told him that Huntsman had directed him to demote Plaintiff, at this juncture, these facts are not enough for the Court to make a firm determination that Huntsman was Plaintiff's joint employer, as a matter of law.

However, under Alabama law, a plaintiff may be compelled to arbitrate claims against a nonsignatory to the arbitration agreement if the claims "are founded on, and are intertwined with, the facts surrounding the underlying contract that contains the arbitration clause." *Ex parte Dyess,* 709 So. 2d 447, 451 (Ala. 1997).  As noted above, Plaintiff claims that Defendants Huntsman and Worley violated Title VII of the Civil Rights Act of 1964 by allegedly demoting him in retaliation for his complaints of racial discrimination. (Doc. 1, PageID. 1-3). Worley provides temporary and third-party staffing and labor personnel to clients throughout the United States. (*Id.* at p.2; PageID. 178). Plaintiff was an employee of Worley who was assigned to perform work at Huntsman's McIntosh, Alabama facility. (Doc. 13-1 at pp. 3-4; PageID. 179-80). In his complaint, Plaintiff alleges that he complained about race discrimination within "their" hiring practices. (Doc. 1 at p. 3; PageID. 3). He was then called into a meeting with

*Huntsman's* EHS Manager and its HR Manager during which they accused him of spreading rumors about race discrimination. (*Id.*). Approximately, five months later, the Worley Site Manager informed Plaintiff that Huntsman told the Site Manager that Worley must terminate or demote him. (*Id.*). Worley's Site Manager told Plaintiff that he had to follow Huntsman's directive. (*Id.*). So, Plaintiff accepted the demotion to a lower paying job. (*Id.*).

Based on Plaintiff's allegations, the claims against Huntsman are indisputably founded on and intertwined with his discriminatory retaliation claims against Worley. Moreover, the arbitration provision here was broad enough in scope to "embrace intertwined claims" and did not limit enforceability to the signatories. *See Cook's Pest Control, Inc. v. Boykin,* 807 So. 2d 524, 527 (Ala. 2001). Finally, the fact that a nonsignatory (Huntsman) is seeking to enforce the arbitration agreement against a signatory (Plaintiff) to the agreement also weighs in favor of Huntsman's position. Based on the foregoing, the doctrine of equitable estoppel directs the conclusion that the arbitration provision at issue here is subject to enforcement by nonsignatory Huntsman as to the claims made against it by Plaintiff.

## IV. Conclusion

For the reasons stated above, the undersigned Magistrate Judge **RECOMMENDS** that the Motion to Dismiss and Compel Arbitration filed by Defendants Huntsman Advanced Materials Americas, LLC and Worley Field Services, Inc. (Doc. 13) be **GRANTED, in part,** and **DENIED, in part.** The undersigned Magistrate Judge **RECOMMENDS** that the Motion to Compel Arbitration be **GRANTED,** that the Motion to

11

Dismiss be **DENIED,** and that this matter be **STAYED** pending the outcome of arbitration.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. Gen. LR 72(c)(1) & (2). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **15th** day of **November, 2023**.

s/P. BRADLEY MURRAY
UNITED STATES MAGISTRATE JUDGE